UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

BROWNMARK FILMS, LLC,

      Plaintiff,

  v.                              Case No. 2:10-cv-01013-JPS

COMEDY PARTNERS, MTV
NETWORKS, PARAMOUNT HOME
ENTERTAINMENT INC., SOUTH
PARK DIGITAL STUDIOS LLC, and
VIACOM INTERNATIONAL, INC.,

      Defendants.

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

| | |
|---|---|
| James D. Peterson<br>Wisconsin State Bar No. 1022819<br><br>GODFREY & KAHN, SC<br>One East Main Street<br>P.O. Box 2719<br>Madison, WI 53701-2719<br>Telephone: (608) 257-3911<br>Facsimile: (608) 257-0609<br>Email: jpeterson@gklaw.com | Alonzo Wickers IV (*Of Counsel*)<br>California State Bar No. 169454<br>Jeff Glasser (*Of Counsel*)<br>California State Bar No. 252596<br><br>DAVIS WRIGHT TREMAINE LLP<br>865 S. Figueroa St., Suite 2400<br>Los Angeles, California 90017-2566<br>Telephone: (213) 633-6800<br>Facsimile: (213) 633-6899<br><br>*Attorneys for Defendants,*<br>*Comedy Partners, MTV Networks,*<br>*Paramount Home Entertainment,*<br>*South Park Digital Studios LLC, and*<br>*Viacom International, Inc.* |

## TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ...................................................................................1

II. THIS COURT CAN AND SHOULD DISMISS BROWNMARK'S CLAIMS BASED ON FAIR USE. .........................................................................................3

    A. Where, As Here, The Plaintiff's Work And The Defendant's Allegedly Infringing Work Are Properly Before The Court, Fair Use May Be Decided At The Pleading Stage. ...................................................................3

    B. Expeditious Resolution Of This Case Is Important Because Brownmark's Complaint Targets The South Park Defendants' Exercise Of Their First Amendment Rights, As Embodied In The Fair-Use Doctrine. ...............................7

III. BROWNMARK IS A NON-EXCLUSIVE LICENSEE THAT DOES NOT HAVE STANDING TO SUE FOR COPYRIGHT INFRINGEMENT. .............................9

IV. CONCLUSION..........................................................................................................11

# TABLE OF AUTHORITIES

Page

**CASES**

*Ashcroft v. Iqbal*,
 556 U.S. ---, 129 S. Ct. 1937 (2009).................................................................................1, 7

*Assessment Technologies of WI v. Wire Data*,
 361 F.3d 434 (7th Cir. 2004) ..................................................................................................3

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................................1, 7

*Berkla v. Corel Corp.*,
 302 F.3d 909 (9th Cir. 2002) ..................................................................................................3

*Broadway Music v. F-R Publ'g Co.*,
 31 F. Supp. 817 (S.D.N.Y. 1940)............................................................................................5

*Brooks v. Ross*,
 578 F.3d 574 (7th Cir. 2009) ..................................................................................................6

*Burnett v. Twentieth Century Fox*,
 491 F. Supp. 2d 962 (C.D. Cal. 2007) ............................................................................passim

*Cavalier v. Random House*,
 297 F.3d 815 (9th Cir. 2002) ..................................................................................................3

*Copyright.net Music Publ'g LLC v. MP3.com*,
 256 F. Supp. 2d 214 (S.D.N.Y. 2003)...................................................................................10

*Daly v. Viacom*,
 238 F. Supp. 2d 1118 (N.D. Cal. 2002) ..................................................................................4

*Davis v. Blige*,
 505 F.3d 90 (2d Cir. 2007).......................................................................................................9

*Deckard v. GMC*,
 307 F.3d 556 (7th Cir. 2002) ..............................................................................................6, 7

*Dombrowski v. Pfister*,
 380 U.S. 479 (1965).................................................................................................................8

*East USA v. Epyx*,
 862 F.2d 204 (9th Cir. 1988) ..................................................................................................3

*Edgenet v. GS1 AIBSL, et al.*,
 2010 U.S. Dist. LEXIS 482 (E.D. Wis. Jan. 5, 2010)..............................................................10

*Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*,
 140 F.2d 268 (2d Cir. 1944)....................................................................................................10

*Eldred v. Ashcroft*,
 537 U.S. 186 (2003)..................................................................................................................8

*Forest River v. Heartland Recreational Vehicles*,
 --- F. Supp. 2d ---, 2010 WL 4683628 (N.D. Ind. Nov. 10, 2010) ...........................................5

*Funky Films v. Time Warner Entm't Co.*,
 462 F.3d 1072 (9th Cir. 2006) ..................................................................................................3

*Gates v. Towery*,
 456 F. Supp. 2d 953 (N.D. Ill. 2006) ........................................................................................5

*Ginsburg v. Black*,
 192 F.2d 823 (7th Cir. 1951) ....................................................................................................5

*Gomez v. Toledo*,
 446 U.S. 635 (1980)...............................................................................................................6, 7

*Grosso v. Miramax Film Corp.*,
 383 F.3d 965 (9th Cir. 2004) ....................................................................................................3

*Hickey v. Capital Cities/ABC*,
 792 F. Supp. 1195 (D. Or. 1992) ..............................................................................................8

*Incredible Technologies v. Virtual Technologies*,
 400 F.3d 1007 (2005)................................................................................................................3

*Karll v. Curtis Publ'g Co.*,
 39 F. Supp. 836 (E.D. Wis. 1941)..............................................................................1, 2, 5, 6

*Leadsinger, Inc. v. BMG Music Publ'g*,
 512 F.3d 522 (9th Cir. 2008) ....................................................................................................5

*Magnuson v. Video Yesteryear*,
 85 F.3d 1424 (9th Cir. 1996) ....................................................................................................3

*O'Rourke v. Palisades Acquisition*,
 --- F.3d ---, 2011 WL 905815 (7th Cir. March 17, 2011).........................................................3

*Sanders v. Dep't of the Army*,
 981 F.2d 990 (8th Cir. 1992) ....................................................................................................6

*Savage v. Council on American-Islamic Relations*,
 87 U.S.P.Q.2d 1730 (N.D. Cal. 2008) ................................................................1, 2, 4, 5

*Sedgwick Claims Mgmt. Svcs. v. Delsman*,
 2009 U.S. Dist. LEXIS 61825 (N.D. Cal. July 17, 2009)...........................................2, 5

*Shell v. DeVries*,
 2007 U.S. App. LEXIS 28317 (10th Cir. Dec. 6, 2007)............................................4, 5

*Sierra Club v. Morgan*,
 2007 U.S. Dist. LEXIS 82760 (W.D. Wis. Nov. 7, 2007)............................................3

*Suzuki Motors Corp. v. Consumers Union*,
 330 F.3d 1110 (9th Cir. 2003) ......................................................................................8

*Sybersound Records v. UAV Corp.*,
 517 F.2d 1137 (9th Cir. 2008) ...................................................................2, 9, 10, 11

*Tierney v. Vahle*,
 304 F.3d 734 (7th Cir. 2002) .......................................................................................4

*Tillman v. New Line Cinema Corp.*,
 295 Fed. Appx. 840, 2008 U.S. App. LEXIS 21522, Copy. L. Rep. (CCH) P29,631
 (7th Cir. Oct. 2, 2008).................................................................................................3

*Topping v. Fry*,
 147 F.2d 715 (7th Cir. 1945) .......................................................................................6

*Washington Post Co. v. Keogh*,
 365 F.2d 965 (D.C. Cir. 1966).....................................................................................8

*Weiner v. Klais & Co.*,
 108 F.3d 86 (6th Cir. 1997) .........................................................................................4

*White v. Marshall*,
 2009 U.S. Dist. LEXIS 10788, Copy. L. Rep. (CCH) P29,701 (E.D. Wis. Dec. 23,
 2009) ..........................................................................................................................10

*Winter v. DC Comics*,
 30 Cal. 4th 881 (2003) .................................................................................................8

*Xechem v. Bristol-Myers Squibb*,
 372 F.3d 899 (7th Cir. 2004) ...................................................................................6, 7

**STATUTES**

17 U.S.C. § 101..................................................................................................................9

17 U.S.C. § 107................................................................................................................11

42 U.S.C. § 1983 ........................................................................................................................7

**RULES**

Federal Rule of Civil Procedure 12 .............................................................................................5

Federal Rule of Civil Procedure 12(c) ..............................................................................1, 4, 5, 6

Federal Rule of Civil Procedure 12(d) .........................................................................................7

Federal Rule of Civil Procedure 56 ..........................................................................................4, 7

Federal Ruleof Civil Procedure 12(b)(6) ............................................................................. passim

**CONSTITUTIONAL PROVISIONS**

United States Constitution, First Amendment ....................................................................2, 7, 8, 9

Defendants Comedy Partners, MTV Networks, Paramount Home Entertainment Inc., South Park Digital Studios LLC, and Viacom International (collectively "the South Park Defendants") respectfully submit the following reply in support of their motion to dismiss plaintiff Brownmark Films, LLC's amended complaint.

## I. SUMMARY OF ARGUMENT

Brownmark does not even address the merits of the South Park Defendants' fair-use argument. Instead, its opposition is premised on the theory that the Court may not consider any affirmative defense, including fair use, on a Rule 12(b)(6) motion. Opp. at 3. There are at least three flaws in Brownmark's argument. First, even before the United States Supreme Court's recent decisions encouraging the use of 12(b)(6) motions to dispose of unmeritorious claims,[1] courts in this Circuit had dismissed claims at the pleading stage based on a variety of affirmative defenses, including fair use in a copyright action. *See, e.g, Karll v. Curtis Publ'g Co.*, 39 F. Supp. 836, 837-838 (E.D. Wis. 1941) (fair use). *See also* cases cited below at 5-6. Second, Brownmark does not dispute that the incorporation-by-reference doctrine, which is recognized in this Circuit,[2] permits the Court to review the "What What in the Butt" music video ("WWITB") and the *South Park* episode in connection with this motion. Third, Brownmark ignores the cases relied on by the South Park Defendants where courts reviewed the plaintiff's work and the defendant's allegedly infringing work and found fair use as a matter of law. *See, e.g, Burnett v. Twentieth Century Fox*, 491 F. Supp. 2d 962, 971-972 (C.D. Cal. 2007) (finding fair use on Rule 12(b)(6) motion); *Savage v. Council on American-Islamic Relations*, 87 U.S.P.Q.2d 1730, 1732

---

[1] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557 (2007) ("*Twombly*"); *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) ("*Iqbal*").

[2] *See* Opening Memorandum at 7.

1

(N.D. Cal. 2008) (same; Rule 12(c) motion); *Sedgwick Claims Mgmt. Svcs. v. Delsman*, 2009 U.S. Dist. LEXIS 61825 at *11-*12 (N.D. Cal. July 17, 2009) (same; Rule 12(b)(6) motion).

Courts' willingness to dismiss baseless copyright-infringement claims at the pleading stage reflects the burden that such claims impose on the exercise of First Amendment rights. Expensive and time-consuming litigation inevitably inhibits free speech and promotes self-censorship by creators whose expressive works comment on, criticize, and lampoon works like WWITB. Thus, even if this Court were unwilling to follow *Burnett*, *Savage*, *Karll*, and the other courts that have granted motions to dismiss based on fair use, the Court should exercise its discretion to convert the motion to a motion for summary judgment and dispose of Brownmark's claims expeditiously.

Of course, the Court need not even reach the fair-use issue, because Brownmark does not have standing to bring this lawsuit. Brownmark seeks to make a distinction between purported assignees and exclusive licensees (Opp. at 2), but these terms are virtually identical under the 1976 Copyright Act. Accordingly, whether a transferor purports to assign an interest in a copyright or to convey an exclusive license, the Ninth Circuit made clear in *Sybersound Records v. UAV Corp.*, 517 F.3d 1137, 1145-1146 (9th Cir. 2008), that "exclusive rights" cannot be transferred unless all of the co-owners agree. Here, Brownmark's amended complaint establishes that Sam Norman, one of the three original co-owners of the copyright in the WWITB music video, did not agree to transfer exclusive rights to Brownmark. Amended Compl. ¶¶ 12-13 and Ex. A. Because Brownmark received only a non-exclusive license, it cannot sue for copyright infringement.

For each of these reasons, the South Park Defendants respectfully request that the Court dismiss Brownmark's claims with prejudice.

## II. THIS COURT CAN AND SHOULD DISMISS BROWNMARK'S CLAIMS BASED ON FAIR USE.

### A. Where, As Here, The Plaintiff's Work And The Defendant's Allegedly Infringing Work Are Properly Before The Court, Fair Use May Be Decided At The Pleading Stage.

The Seventh Circuit never has decided whether a district court, under appropriate circumstances, may grant a motion to dismiss based on fair use in a copyright parody case. In the absence of controlling authority, a court may look to authority from other courts around the country for guidance. *See*, *e.g.*, *O'Rourke v. Palisades Acquisition*, --- F.3d ---, 2011 WL 905815, at *6 (7th Cir. March 17, 2011) (Tinder, J., concurring) ("we are not bound by the holdings of other circuits, but we frequently look to them as informative and persuasive authority") (citations omitted); *Sierra Club v. Morgan*, 2007 U.S. Dist. LEXIS 82760, at *22 (W.D. Wis. Nov. 7, 2007) ("[b]oth parties resort to the persuasive authority of other district and circuit courts in helping to define 'operator,' and the Court relies on some of those authorities to help decide whether defendants are 'operators'").[3]

In *Burnett*, the case most closely on point, the district court granted the defendants' Rule 12(b)(6) motion to dismiss comedienne Carol Burnett's copyright-infringement claim stemming from a "crude" parody of her Charwoman character on the animated television series *Family*

---

[3] The Seventh Circuit regularly cites to Ninth Circuit cases as persuasive authority in copyright cases. *See*, *e.g.*, *Incredible Technologies v. Virtual Technologies*, 400 F.3d 1007, 1015 (2005) (citing *East USA v. Epyx*, 862 F.2d 204, 209 (9th Cir. 1988), on *scènes à faire* doctrine); *Assessment Technologies of WI v. Wire Data*, 361 F.3d 434, 436-437 (7th Cir. 2004) (citing *Berkla v. Corel Corp.*, 302 F.3d 909, 923 (9th Cir. 2002), and *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996), on standards for determining whether to grant attorneys' fees to prevailing parties in copyright cases); *Tillman v. New Line Cinema Corp.*, 295 Fed. Appx. 840, 842-843, 2008 U.S. App. LEXIS 21522, Copy. L. Rep. (CCH) P29,631 (7th Cir. Oct. 2, 2008) (citing *Funky Films v. Time Warner Ent't Co.*, 462 F.3d 1072, 1078-1081 (9th Cir. 2006), *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004), and *Cavalier v. Random House*, 297 F.3d 815, 823-825 (9th Cir. 2002), on "substantial similarity" requirements for copyright-infringement actions).

3

*Guy*. 491 F. Supp. 2d at 971-972. Even though the plaintiff did not attach the relevant *Family Guy* episode to her complaint, the Court explained that it could consider the episode under the incorporation-by-reference doctrine, because the episode was referred to and formed the basis of the plaintiff's claim. *Id.* at 966, citing *Daly v. Viacom*, 238 F. Supp. 2d 1118, 1121-1122 (N.D. Cal. 2002) (considering "television program referenced in, but not attached to, complaint" on a motion to dismiss). The incorporation-by-reference doctrine serves an important policy. Without it, the Seventh Circuit has cautioned that a "plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). "The cases therefore allow the defendant to submit the document to the court, and the court to consider it, without need for conversion to Rule 56." *Id. See also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (stating that "a defendant may introduce certain pertinent documents if the plaintiff fails to do so. … Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied").

Relying on the incorporation-by-reference doctrine, the court in *Burnett* analyzed the complaint and the *Family Guy* episode at issue, and then found as a matter of law that the Charwoman parody was a fair use and thus not an infringement. 491 F. Supp. 2d at 966-972. Similarly, the court in *Savage* relied on the incorporation-by-reference doctrine to review a four-minute audio clip of a radio host's anti-Islamic rant that a Muslim civil-liberties group had posted on its website. 87 U.S.P.Q.2d at 1732. The court then found that the group's use was a fair use, and granted its Rule 12(c) motion. *Id.*

Conspicuously, Brownmark does not address the incorporation-by-reference doctrine. Nor does it mention – much less attempt to distinguish – *Burnett*, *Savage*, or the other cases in

4

which courts have granted motions to dismiss based on fair use. *See, e.g., Shell v. DeVries*, 2007 U.S. App. LEXIS 28317 at *2 (10th Cir. Dec. 6, 2007) (affirming order granting motion to dismiss copyright-infringement claim based on fair use); *Sedgwick Claims Mgmt. Svcs.*, 2009 U.S. Dist. LEXIS 61825 at *11-*12 (granting motion to dismiss copyright claim stemming from use of two promotional photographs on "WANTED" posters as part of blog post authored by critics of company's executives); *Karll*, 39 F. Supp. at 837-838 (granting motion to dismiss copyright claim based on fair use); *Broadway Music v. F-R Publ'g Co.*, 31 F. Supp. 817, 818-819 (S.D.N.Y. 1940) (same). *See also Forest River v. Heartland Recreational Vehicles*, --- F. Supp. 2d ---, 2010 WL 4683628, at *7-*9 (N.D. Ind. Nov. 10, 2010) (evaluating fair-use defense in connection with motion to dismiss; denying motion in part because defendant's use was not "transformatively different from the original purpose" of the plaintiff's work). The only fair-use case that Brownmark mentions is *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008), where the court affirmed an order granting a defendant's motion to dismiss a plaintiff's claim for declaratory judgment based on fair use. Contrary to Brownmark's suggestion, the *Leadsinger* court did not instruct that district courts cannot consider a defendant's Rule 12 motion to dismiss a copyright-infringement claim based on fair use. *Id.* In fact, district courts specifically have cited *Leadsinger* as support for their authority to do exactly that. *See Sedgwick Claims Mgmt. Svcs.*, 2009 U.S. Dist. LEXIS 61825 at *11 (Rule 12(b)(6) motion); *Savage*, 87 U.S.P.Q.2d at 1731 (Rule 12(c) motion).

      In an apparent attempt to divert the Court's attention from the works at issue, Brownmark insists that a Rule 12(b)(6) motion is improper because fair use is an affirmative defense. Opp. at 3-4. But courts in this Circuit have granted motions to dismiss based on a variety of affirmative defenses, ranging from res judicata (*Gates v. Towery*, 456 F. Supp. 2d 953, 956 (N.D.

5

Ill. 2006)) and privilege (*Ginsburg v. Black*, 192 F.2d 823, 827 (7th Cir. 1951)), to laches (*Topping v. Fry*, 147 F.2d 715, 718 (7th Cir. 1945)) and even fair use (*Karll*, 39 F. Supp. at 837-838). In *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009), the Seventh Circuit again made clear that a motion to dismiss may be granted based upon an affirmative defense. There, the court affirmed the district court's order granting the defendants' Rule 12(b)(6) motion based upon the statute of limitations. *Id.* "Technically," the court noted that "one might see this as a motion for judgment on the pleadings under Rule 12(c) rather than a motion under Rule 12(b)(6) [because the statute of limitations is an affirmative defense], but *the practical effect is the same*." *Id.* (emphasis added). The court did not require the defendants in *Brooks* to go through the formality of filing an answer that alleged the statute of limitations as a defense; it simply affirmed the dismissal. *Id.* Other courts likewise have recognized that a court may grant a motion to dismiss without requiring "the meaningless formality" of an answer setting forth the affirmative defense that is the subject of the motion to dismiss, since the motion to dismiss provides the plaintiff with sufficient notice of the defense. *Sanders v. Dep't of the Army*, 981 F.2d 990, 991 (8th Cir. 1992).

The three cases primarily relied on by Brownmark – *Deckard v. GMC*, 307 F.3d 556 (7th Cir. 2002); *Gomez v. Toledo*, 446 U.S. 635 (1980); and *Xechem v. Bristol-Myers Squibb*, 372 F.3d 899 (7th Cir. 2004) – are all readily distinguishable. In *Deckard*, both parties submitted evidence outside the pleadings in connection with a motion to dismiss. 307 F.3d at 560. Consequently, the court converted the motion to dismiss into a motion for summary judgment. *Id.* Although this Court could do so here, it need not, because the South Park Defendants' motion relies entirely on evidence that either is attached to the amended complaint (Ex. A) or may be considered part of the complaint under the incorporation-by-reference doctrine (Exs. 1-

3). In *Gomez*, the Supreme Court observed that the nature of the qualified-immunity defense raised by government officials responding to a Section 1983 claim precluded a decision at the pleading stage, because "whether such immunity has been established depends on facts peculiarly within the knowledge and control of the defendant." 446 U.S. at 640-641. In contrast, the South Park Defendants' fair-use defense relies solely on the WWITB music video and the *South Park* episode at issue, neither of which are peculiarly within the South Park Defendants' control. And in *Xechem*, the court specifically noted that Rule 12(b)(6) motions could be granted based on an affirmative defense where the complaint "admits all ingredients of an impenetrable defense." 372 F.3d at 901. Fair use is such a defense here, and may be decided based solely on matters that are part of the complaint through the incorporation-by-reference doctrine.[4]

The South Park Defendants simply ask the Court to examine Brownmark's amended complaint and the works that are repeatedly referred to in the complaint and that are the basis of the claims,[5] and to determine whether *South Park*'s overt parody of the WWITB music video is a fair use. As set forth in detail in the South Park Defendants' opening memorandum, all four fair-use factors weigh heavily in favor of dismissal.[6]

### B. Expeditious Resolution Of This Case Is Important Because Brownmark's Complaint Targets The South Park Defendants' Exercise Of Their First Amendment Rights, As Embodied In The Fair-Use Doctrine.

Even if the Court were inclined not to rule on the motion to dismiss, it would have discretion to convert the South Park Defendants' motion to a summary-judgment motion and to

---

[4] In addition, *Deckard*, *Gomez*, and *Xechem* all were decided before the United States Supreme Court's decisions in *Twombly* and *Iqbal*, which increased the burden on plaintiffs opposing motions to dismiss. *See Twombly*, 550 U.S. at 555-557; *Iqbal*, 129 S. Ct. at 1949.

[5] *See* Amended Compl. ¶¶ 11, 14-19.

[6] *See* Opening Memorandum at 10-20.

7

resolve the question of fair use in favor of the South Park Defendants pursuant to Federal Rules of Civil Procedure 12(d) and 56. As the Supreme Court explained in *Eldred v. Ashcroft*, 537 U.S. 186, 219-220 (2003), the fair-use doctrine is one of the key "built-in First Amendment accommodations" in the Copyright Act. Courts repeatedly have held that claims, like Brownmark's, that target the exercise of First Amendment rights should be dismissed expeditiously to avoid "the chilling of First Amendment rights inherent in expensive and time-consuming litigation." *Hickey v. Capital Cities/ABC*, 792 F. Supp. 1195, 1199 (D. Or. 1992). As the D.C. Circuit long ago recognized:

> The threat of being put to the defense of a lawsuit … may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit. … Unless persons … desiring to exercise their First Amendment rights are assured freedom from the harassment of lawsuits, they will tend to become self-censors.

*Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966). The Supreme Court also has warned that "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution [of a lawsuit], unaffected by the prospects of its success or failure." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). Because "the costs of a successful defense can be the same or greater than what the damage awards would have been," publishers of expressive works will be inhibited unless they are "insulate[d] … from the vicissitudes of ordinary civil litigation in order to foster [the goals of] the First Amendment." *Suzuki Motors Corp. v. Consumers Union*, 330 F.3d 1110, 1142-1143 (9th Cir. 2003) (Ferguson, J. dissenting).

Thus, in the analogous context of a state-law right-of-publicity claim against a comic-book publisher, the California Supreme Court reiterated that "because unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy disposition of [such] cases … is desirable." *Winter v. DC Comics*, 30 Cal. 4th 881, 892 (2003).

8

Such claims "can often [be] resolve[d] … *as a matter of law* simply by a viewing of the [defendant's] work in question" and applying the appropriate First Amendment test. *Id.* (emphasis added). Indeed, such cases are "often properly resolved on summary judgment or … even on demurrer" (or, presumably, on an analogous motion to dismiss in federal court). *Id.*

This approach is proper, and is essential to protecting free expression. If Brownmark's contrary argument were adopted, a defendant whose expressive work was targeted by a copyright-infringement, right-of-publicity, defamation, or other content-based claim could not assert a First Amendment-based defense to dispose of the claim at the pleading stage if the plaintiff merely alleged the elements of the claim, even if plaintiff's conclusory allegations were flatly contradicted by the contents of the defendant's work. That result would defy the long line of cases encouraging the prompt resolution of claims that target speech, and would nullify the incorporation-by-reference doctrine, under which this Court may evaluate the *South Park* episode that is the centerpiece of Brownmark's complaint. By reviewing that episode, this Court can and should determine as a matter of law that the South Park Defendants' parody is a fair use.

## III. BROWNMARK IS A NON-EXCLUSIVE LICENSEE THAT DOES NOT HAVE STANDING TO SUE FOR COPYRIGHT INFRINGEMENT.

Plaintiff seeks to avoid the holding of *Sybersound Records* by distinguishing between a purported assignment and a purported exclusive license.[7] Opp. at 1-2. However, even the case that Brownmark relies on, *Davis v. Blige*, 505 F.3d 90, 100 n.10 (2d Cir. 2007), acknowledges that "[t]he differences between an 'exclusive' license and an assignment or transfer of copyright ownership interest have diminished to the point that the terms are nearly synonymous." The *Davis* court's observation is not surprising, since the definition of "transfer" in 17 U.S.C. § 101 – that "'transfer of copyright ownership' is an *assignment*, mortgage, *exclusive license* or any other

---

[7] Despite Brownmark's statement to the contrary, the court in *Sybersound Records* plainly discussed the copyright-infringement claim at length. *See* 517 F.3d at 1145-1146.

conveyance … of a copyright or any of the exclusive rights comprised in a copyright …" – reflects the virtual equivalence of the two terms. (Emphasis added.)

Given the congruity between a purported assignment and a purported exclusive license, there is no reason to treat Brownmark any differently than the plaintiff in *Sybersound Records*. In that case, the transfer agreement between the original co-owner, TVT, and Sybersound Records purported to make Sybersound an "*exclusive assignee* and licensee of TVT's copyrighted interests for purposes of karaoke use, and also the *exclusive assignee* of the right to sue to enforce the assigned copyright interest." *Sybersound Records*, 517 F.3d at 1145-1146 (emphasis added). Thus, in both *Sybersound Records* and in the present case, the plaintiffs referred to their agreements in terms of "assignment" and claimed that they were co-owners of the copyright. In *Sybersound*, the Ninth Circuit nevertheless held that the entity receiving the rights from the original co-owner could not receive exclusive rights, including the right to sue, "unless *all* of the other co-owners of the copyright joined" in granting the rights. 517 F.3d at 1146 (emphasis added). The court's rationale is that any other rule would interfere with the other co-owners' "independent rights to exploit the copyright." *Id.*[8]

---

[8] The other copyright cases cited by Brownmark (*see* Opp. at 2) are inapposite. In *Edgenet v. GS1 AIBSL, et al.*, 2010 U.S. Dist. LEXIS 482, at *13-*14 (E.D. Wis. Jan. 5, 2010) (Stadtmueller, J.), Big Hammer had transferred all of its ownership interest in the subject taxonomies to Edgenet before the events in question. Consequently it was not a co-owner, and could not sue for copyright infringement. Edgenet does not address the situation where some, but not all, joint owners of a work purport to assign their interests or to grant "exclusive licenses" in a work, as occurred here. Likewise, *Copyright.net Music Publ'g LLC v. MP3.com*, 256 F. Supp. 2d 214, 217 (S.D.N.Y. 2003), did not address the situation where a plaintiff sought to bring a copyright-infringement lawsuit based on rights that purportedly had been assigned or licensed to the plaintiff. As for *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 268, 269 (2d Cir. 1944), under that copyright regime, the legal right to the copyright went to one owner and the second owner's interest was equitable. Hence, the holder of the legal title to a copyright could sue without joining the equitable owners. *Id.* But since "[t]here is no such separation of legal and equitable interests in the copyright registration" under the current Copyright Act, this case is of limited value, as this Court has stated. *See White v. Marshall*, 2009

10

Here, Brownmark concedes that Sam Norman is an original co-claimant or joint owner of the copyright in the WWITB music video. Amended Compl. ¶¶ 12-13 and Ex. A. According to the amended complaint, Bobby Ciraldo and Andrew Swant – *but not Norman* – assigned their rights to Brownmark in 2008. *Id.* ¶ 13. Under *Sybersound Records*, Ciraldo and Swant – without Norman – could grant Brownmark only a nonexclusive license in WWITB. 517 F.3d at 1145-1146. Brownmark thus stands in the same shoes as the plaintiff in *Sybersound Records*; it is "neither an exclusive licensee nor a co-owner" in the copyrights at issue (*id.*), and consequently does not have standing to bring copyright-infringement claims. The Court should grant the South Park Defendants' motion for this independent reason.

## IV.  CONCLUSION

Brownmark does not want this Court to view the *South Park* episode that forms the basis of this lawsuit because the South Park Defendants' parody of the WWITB music video clearly is protected as a fair use.[9] As the court concluded in another recent case involving a parody on an animated television series, when "the four factors of § 107 weigh strongly in favor of a finding of fair use," the plaintiff's copyright-infringement claim "should be dismissed without leave to amend." *Burnett*, 491 F. Supp. 2d at 971 (granting Rule 12(b)(6) motion). The same is true here. The South Park Defendants, therefore, respectfully request that the Court grant their motion to dismiss.

---

U.S. Dist. LEXIS 10788, Copy. L. Rep. (CCH) P29,701 (E.D. Wis. Dec. 23, 2009) (Stadtmueller, J.).

[9] *See* Opening Memorandum at 10-20.

11

DATED: March 30, 2011

GODFREY & KAHN
James D. Peterson
Wisconsin State Bar No. 1022819

DAVIS WRIGHT TREMAINE LLP
Alonzo Wickers IV (*of counsel*)
California State Bar No. 169454
Jeff Glasser (*of counsel*)
California State Bar No. 252596

By: *s/ James D. Peterson*
        James D. Peterson

Attorneys for Defendants,
Comedy Partners, MTV Networks, Paramount Home Entertainment, Inc., South Park Digital Studios LLC, and Viacom International, Inc.

DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa St., Suite 2400
Los Angeles, California 90017-2566
(213) 633-6800
Fax: (213) 633-6899

GODFREY & KAHN
One East Main St., Suite 500
P.O. Box 2719
Madison, Wisconsin 53701-2719
(608) 257-3911
Fax: (608) 257-0609

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 30, 2011, I caused the foregoing Defendants' Reply In Support Of Motion To Dismiss Plaintiff's Amended Complaint to be electronically filed with the Clerk of the Court using the ECF system which will make this document available to all counsel of record for viewing and downloading from the ECF system.

      Dated: March 30, 2011.

                                        *s/ James D. Peterson*
                                        James D. Peterson

6185894_1