UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BROWNMARK FILMS LLC,

      Plaintiff,

v.

COMEDY PARTNERS,
MTV NETWORKS,
PARAMOUNT PICTURES
CORPORATION, SOUTH PARK
DIGITAL STUDIOS LLC, and
VIACOM INTERNATIONAL INC.,

      Defendants.

Case No. 10-CV-1013-JPS

ORDER GRANTING
ATTORNEY FEES
AND COSTS

  On July 6, 2011, this Court dismissed Brownmark Films' suit with prejudice. (Docket #23). Brownmark has since appealed that decision. (Docket #26).

  However, the issue of attorney fees and costs still remains with this Court for decision. The parties have filed numerous documents on this issue. Aside from the standard issues of attorney fees and costs, the parties' filings also raise several procedural issues. After recounting the case background, the Court must dispense with those procedural issues first. The Court will then turn to the issue of attorney fees and costs, ultimately granting the defendants' motions for costs and fees.

1. Background

  Brownmark initiated this suit in November 2010, alleging willful copyright violation by the defendants. Brownmark sought: (1) statutory damages; (2) a declaration that the defendants willfully, both directly and secondarily, infringed upon Brownmark's copyrights; (3) an injunction

requiring the defendants to cease any direct or indirect infringement; and (4) further relief, including attorneys' fees and pre- and post-judgment interest. (Docket #1).

Rather than submit an answer, on February 22, 2011, defendants filed a motion to dismiss. (Docket #8). After Brownmark's response and the defendants' reply were filed, the Court granted the defendants' motion. (Docket #16, #22, #23). On July 6, 2011, the Court dismissed all of Brownmark's claims, finding that the defendants' actions were protected as fair use. (Docket #23). Brownmark has appealed this decision to the United States Court of Appeals for the Seventh Circuit. (Docket #26–#30).

The defendants, as prevailing parties in the District Court, then filed the present motion seeking attorney fees and costs. (Docket #34). The issue has now been fully briefed. (Docket #34–#42). To provide an adequate basis on which to decide this issue, the Court will first set forth the factual basis for Brownmark's suit, as well as the procedural posture of this case.

### 1.1 Brownmark's Copyright Claims

Brownmark is a purported co-owner of a copyright in the "What What (In the Butt)" music video ("WWITB"). (Am. Compl. ¶¶ 11-13). The video features a male vocalist repeatedly singing the title of the video and several derivations thereof accompanied by a series of surreal images. Perhaps unsurprisingly, the video went "viral," and currently has over 43 *million* views on Youtube.[1]

Shortly thereafter, the defendants aired an episode of the television series South Park, titled "Canada on Strike," in which one of the show's

---

[1] Samwell, "What What (In the Butt)." Uploaded Feb. 14, 2007, by Brownmark Films. Available at: http://www.youtube.com/watch?v=fbGkxcY7YFU.

characters creates a video that is very similar to Brownmark's original WWITB video. (Am. Compl. ¶ 14). In the South Park version, which lasts fifty-eight seconds, the South Park character sings many of the same lyrics as are featured in the original WWITB video; the South Park version also features surreal imagery, similar to that in the original. (*Id.*). In the episode—much like in reality for Brownmark—the character's video becomes a viral hit. (*Id.*). However, much to the chagrin of the South Park characters—and in a result that may mirror reality a bit too closely for Brownmark—there are no riches of "internet money" to be had, despite the popularity of their work. In a classic bit of art imitating and commenting upon life, the South Park characters learn that it is difficult to convert viral internet fame into real money; Brownmark's proprietors have undoubtedly learned much the same.

 1.2 Case History

As mentioned above, Brownmark filed this case in November of 2010, after which time they filed an amended complaint in January of 2011. (Docket #1, # 6).

In February 2011, the defendants filed a motion to dismiss. (Docket #8). In their brief in support of that motion, the defendants argued that Brownmark lacked standing to prosecute the action. (Def.'s Br. in Supp., 9–10). The defendants also argued that the South Park replica was parody, and thus protected as fair use. (Def.'s Br. in Supp., at 10–21).

Brownmark filed their response in March of 2011, arguing that they had standing to sue and also that the defendants' Motion to Dismiss was improper, due to its being based on an affirmative defense. (Pl.'s Resp., 1–5). Brownmark's response was devoted primarily to the latter point, and did not

directly respond to the defendants' claims of fair use. (Pl.'s Resp., at 3–5). The defendants then took these arguments up in their reply brief, urging the Court to decide the fair use issue at the pleading stage.

The Court did just that in its July 6, 2011 order. After finding that Brownmark had standing to sue, the Court addressed the separate procedural and substantive issues of the defendants' fair use argument. On the procedural side of the issue, the Court held that it could address the defendants' affirmative defense of fair use at the pleading stage, because Brownmark's complaint and centrally-related materials "set forth everything necessary to satisfy the affirmative defense." (Order Granting Mot. Dismiss, 13 (quoting *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009))). The Court noted that the evaluation of an affirmative defense at the pleading stage is "'irregular.'" (*Id.*, at 14 (quoting *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 627 (7th Cir. 2003))). But, in the end, the Court decided to address the issue, concluding that the dispute "'simply does not warrant putting the defendant through the expense of discovery,'" when considering that the entire dispute between the parties could be solved much more efficiently by resolving the substantive underlying issue at the pleading stage. (Order Granting Mot. Dismiss, 14 (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011))).

Thus, the Court turned to the substantive fair use issue, and concluded that the case should be dismissed at the pleading stage, because the defendants' work is entitled to fair use protection. (Order Granting Mot. Dismiss, 19). In reaching its decision, the Court found that the factors of fair use weighed in favor of the defendants: (1) the "purpose and character" of the South Park replica was both a parody and also transformative of the

original; (2) the nature of the copyrighted work—while copied in some ways—was of little help to the Court, because the South Park version was a parody, the nature of which practically requires the copying of a publicly-known work; (3) the South Park version, in fact, used relatively little of the original copyrighted work, and did not mirror the original; and (4) the South Park version is unlikely to usurp any of the market demand for the original. (*Id.*, at 17–19).

For those reasons, the Court held that the defendants' use was fair. (Ord. Granting Mot. Dismiss, at 19). Thus, their work was protected by that affirmative defense, and the Court dismissed Brownmark's claims with prejudice. (Ord. Granting Mot. Dismiss, at 20). Brownmark has appealed the Court's decision to the United States Court of Appeals for the Seventh Circuit. (Docket # 26–30).

Meanwhile, the defendants' Motion for Attorney Fees and Costs still remains before this Court. (Docket #34). On August 3, 2011, Brownmark filed both a request for adversary submissions and its response to the defendants' motion on the fees and costs issue. (Docket #36, #37). The defendants then filed their reply brief, on August 17, 2011. (Docket #38). Afterward, on August 23, 2011, Brownmark submitted a flurry of documents: two motions and a reply, all of which are related to the issue of attorney fees. (Docket #39, #40, #41). Finally, on August 30, 2011, the defendants submitted a brief opposing Brownmark's three August 23, 2011 filings. (Docket #42).

By order, on September 27, 2011, the Court struck what it deemed to be an unauthorized sur-reply brief submitted by Brownmark. (Docket #43). The Court also ordered that the parties submit briefs addressing the defendants' objections to several pieces of evidence submitted by

Brownmark in support of their opposition to defendants' request for attorneys' fees. (Docket #43).

2. Analysis

In order that it can make its fees decision on the appropriate record, the Court will first resolve the defendants' objections to the evidence submitted by Brownmark. After addressing those objections, the Court will move to the defendants' motion for attorneys' fees.

    2.1    Defendants' Evidentiary Objections

On August 23, 2011, Brownmark filed three separate documents. The Court has already addressed one of those documents: Brownmark's unauthorized sur-reply brief. (*See* Docket #43 (disregarding Docket #41)). As discussed above, by its September 27, 2011 order, the Court effectively struck Brownmark's unauthorized sur-reply. (Docket #43). By the same order, the Court also requested that the parties brief the issue of the defendants' objections to several of Brownmark's evidentiary submissions. (Docket #43). Having received the parties' briefs, the Court will now address that issue.

The defendants argue that the Court should strike portions of declarations submitted by Brownmark's attorneys, Caz McChrystal ("McChrystal") and Bobby Ciraldo ("Ciraldo"). (Docket #44: Def.'s Mem. in Supp. Obj. Ev. at 1). Specifically, with regards to the McChrystal declaration, the defendants object to the fact that McChrystal included legal analysis and conclusions in his declaration, as support for Brownmark's contention that their position was reasonable.

The Court agrees and will, therefore, strike paragraphs five through twenty-six of McChrystal's declaration. Those paragraphs are replete with legal conclusions and references to case law, all of which appear to be

intended to bolster Brownmark's legal argument that their position was reasonable. (McChrystal Decl. ¶¶ 5–26). While the Court understands McChrystal's desire to set forth facts that establish his reliance on case law, the Court believes that statements like McChrystal's are much better suited to a legal brief. In fact, if McChrystal merely relied on his statements to establish the *fact* that he relied on certain cases or statutes, the Court would be inclined to allow his declaration to stand. But, instead, in his declaration, McChrystal goes so far as to address arguments made by the defendant (*see, e.g.*, McChrystal Decl. ¶ 7, 14), apply the fair use factors and case law to Brownmark's claim (*see, e.g.*, McChrystal Decl. ¶¶ 12, 13, 20, 23), and make further legal accusations against the defendants (*see, e.g.*, McChrystal Decl. ¶ 15 ("the Defendants did not more than use the WWITB video in a humorous fashion to poke fun at the viral video phenomenon, Internet celebrity, and …[the] musical composition"), ¶ 18 ("the Defendants' use of the WWITB video is not of a strong transformative nature"). He does all of this without ever making a prefatory statement that he is merely establishing the fact that he researched and relied upon the cited arguments and cases in reaching a decision to bring a claim.

Therefore, the Court agrees with the defendants, and finds that paragraphs five through twenty-six of McChrystal's declaration contain improper legal conclusions and argumentation that are impermissible in an declaration. (Def.'s Mot. in Supp. Obj. Ev. 2–3 (citing *Chen v. Mayflower Transit*, 315 F. Supp. 2d 886, 923 (N.D. Ill. 2004), *Vasquez v. Central States Joint Board*, 2006 U.S. Dist. LEXIS 11355, at *31–*32 (N.D. Ill. March 15, 2006))). As such, the Court is obliged to strike paragraphs five through twenty-six of McChrystal's declaration. (Docket #37, Ex. A).

The Court next turns to the defendants' objections to Ciraldo's declaration. The defendants object on multiple grounds, and the Court will address each objection by the defendants' legal argument against it: first, hearsay; second, best evidence rule; third, relevance; fourth speculation; and, fifth, defendants' specific argument against Ciraldo's side-by-side comparison of the WWITB with South Park's version.

First, with relation to defendants' hearsay objections, the Court will not strike Ciraldo's statements. Brownmark argues that each of the statements to which the defendants object are asserted to show that Brownmark filed its suit as a result of its belief that an active market existed for its work, leading Brownmark to its conclusion that it had not received fair compensation for the defendants' use of the WWITB video. (Pl. Resp. Obj. Ev. 6). That fact, Brownmark asserts, shows that it did not have an improper motive for filing the case. (Pl. Resp. Obj. Ev. 6). The Court agrees: Ciraldo's declaration references statements of others that show specific instances of other attempts or interest in licensing the WWITB video. But, Brownmark is not relying on those statements to show that specific parties had made requests to license the WWITB video; rather, Brownmark uses Ciraldo's statements to show a general demand in the market and that Brownmark had a proper motive to bring this suit. As such, the Court will not strike paragraphs six, seven, eleven, fourteen, or sixteen, as being improper hearsay.

Second, the Court turns to the defendants' best evidence rule objections to paragraphs six, seven, eight, ten, twelve, sixteen, and eighteen; the Court overrules those objections, as well. The best evidence rule requires that original versions of documents be submitted *if* the contents of those

documents are being admitted. *See* Fed. R. Ev. 1002, 1004. The defendants' objections hit a snag due to the fact that Brownmark does not rely on the contents of the documents it discusses, but, as above, discusses those documents in arguing that an active market existed for the WWITB video. Therefore, the lack of original documents does not create best evidence rule problems.

Third, the Court addresses the defendants' relevance objections to paragraphs six, seven, and eleven. (Def. Mem. Supp. Obj. Ev. 6). The defendants argue that licensing agreements with outside parties are irrelevant, but the Court disagrees. A portion of the inquiry into whether to award attorneys' fees requires the Court to consider whether Brownmark acted reasonably in brining this suit. As already discussed, evidence of an active market may factor into the Court's determination as to whether it was reasonable for Brownmark to bring this suit. As such, the Court finds paragraphs six, seven, and eleven relevant to the issue at hand, and will not strike those portions of Ciraldo's declaration.

Fourth, the Court examines and agrees with Brownmark's argument that the defendants placed Brownmark's subjective motivations at issue and, thus, the personal beliefs of Ciraldo is admissible. (Pl. Resp. Obj. Ev. 8–9). The defendants have argued that Brownmark's motivation is "questionable" (Def. Mem. Atty. Fee 9–10); as such, Ciraldo's statements regarding his personal beliefs should be admitted as probative of his motivation as a member of Brownmark. While the Court will treat those statements cautiously, as Ciraldo's credibility may be questioned as an interested party, the Court will not strike them.

Finally, with regard to the defendants' *Miracle Blade* argument that Ciraldo's side-by-side comparison of the two works in question (Ciraldo Decl. ¶ 35, App. 1), the Court finds no reason to strike Ciraldo's comparison. In that case, the court objected to—but ultimately admitted—a summary comparison between two works. *Miracle Blade, LLC v. Ebrands Commerce group, LLC*, 207 F. Supp. 2d 1136, 1145–1146 (D. Nev. 2002). But, there, the court's objection to the summary was that the defendants had not complied with Rule 1006 of the Federal Rules of Evidence by submitting a copy to the other party prior to its admission. *Id.*, at 1146. The Court ultimately admitted the summary, though, because the plaintiff had "sufficient opportunity and notice to attempt to retrieve [the] materials." *Id.* The only portion of the summary that the court in that case struck was a legal conclusion stated by the declarant. *Id.*, at 1145 (stating that the summary "clearly shows that there is no copyright infringement").

*Miracle Blade* does not require that the Court strike Ciraldo's side-by-side summary comparison. To begin, the defendants have not argued that any of Ciraldo's comparison reaches an improper legal conclusion. Further, the defendants have not made a Rule 1006 objection to the comparison, which would seem to be the proposition for which *Miracle Blade* stands most strongly. *See id.*, at 1146. Even so, the Court sides with the *Miracle Blade* decision, finding that—even if there were a Rule 1006 problem—the defendants have viewed and acknowledged the similarities between the two videos on multiple occasions. In fact, the similarities between the videos is at the heart of this lawsuit. A summary of the similarities does not disservice the defendants and, therefore, the Court will not strike Ciraldo's side-by-side comparison. (Ciraldo Decl., App. 1).

To summarize, the Court strikes paragraphs five through twenty-six of McChrystal's declaration, but leaves Ciraldo's declaration fully intact.

2.2     Defendants' Entitlement to Attorneys' Fees and Costs

Having decided the record upon which to determine the issue of attorneys' fees, the Court now turns its attention to that matter.

The Copyright Act grants courts discretion to award reasonable attorneys' fees and costs to prevailing parties in civil copyright actions. 17 U.S.C. § 505. In determining whether to exercise that discretion and award costs and fees, the Court may look to a number of nonexclusive factors accepted by the Supreme Court: (1) the objective unreasonableness of the action; (2) the losing party's motivations for filing or contesting the action; (3) the frivolousness of the action; and (4) the need to "advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n. 19 (1994) (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3rd Cir. 1986) (internal quotations omitted)).

The Seventh Circuit has refined this standard further. According to the Seventh Circuit, the "two most important [of these] considerations…are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." *Assessment Techs. of Wisconsin, LLC v. Wire Data, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004). Furthermore, the Seventh Circuit has specifically noted that, while "prevailing plaintiffs and prevailing defendants are to be treated alike," the presumption in favor of awarding fees to a prevailing defendant is "very strong." *Id.,* at 436–37 (refining *Fantasy*, 510 U.S. at 534; citing *Diamonds Star Building Corp. v. Freed*, 30 F.3d 536, 506 (4th Cir. 1994)).

Applying the factors discussed by the Supreme Court, taken in conjunction with the Seventh Circuit's presumption in favor of prevailing defendants, the Court finds that the defendants' are entitled to attorneys' fees and costs.

To begin, the defendants' fair-use argument was very strong, and Brownmark's legal position was objectively unreasonable. The Court took the somewhat rare step of deciding this case at the motion to dismiss stage, precisely because the defendants' fair-use defense was so strong, satisfying all four fair-use factors. First, the Court found that South Park's work was a "clear" parody, which one could gather quickly and easily from watching the episode. Second, South Park's version of the video was transformative, using the series' own characters and a different recording of the song, even if the words and images were similar. Third, even with those similarities, South Park made many changes to the form of the original and used only enough lines to conjure up the original. South Park's use was insubstantial. And, fourth, the Court found that South Park's version of the video would not usurp the market for Brownmark's original. In fact, in this respect, it is most likely that South Park's use would have spurred demand for the original, making the viral video's spread more rapid after its exposure to a national television audience. The satisfaction of these factors shows that the defendants' case was very strong.

Inquiring further, the Court finds that Brownmark's legal positions were also objectively unreasonable, and thus their position was frivolous. To this Court, there is little that could justify the plaintiff's stated view that the South Park version was not parody. Brownmark argues that South Park's clip could be viewed as satire, and would thus require a heightened amount

of transformation to be a fair use. (*See* Pl.'s Resp. Atty. Fee 8–9 (citing *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 580 (1994))). This argument fails for two reasons. Not only was South Park's video a parody, but South Park substantially transformed its version from the original. South Park did not directly copy Brownmark's original video and insert it into the episode;[2] rather, South Park created a video that purposefully mocked the obscure images and song of the original, all in an attempt to poke fun at the original, its viral popularity, and internet crazes as a whole. It may have been intended partially as satire, but also clearly encompassed elements of parody. And, further, given the transformative nature of the use and the lampooning Brownmark's original received, there is ample reason to believe that South Park's use would have greater spurred the market for the original. In the internet era, with information freely and quickly accessible, viewers interested in South Park's version could turn to the internet to find a copy of the original. And any confusion over which version was the original could be supplied to online viewers through a statement at the video's web page. For all of these reasons, the Court finds that Brownmark was objectively unreasonable in its position that South Park's use was not fair.

---

[2]Brownmark argues that the defendants' produced a "near-verbatim copy, merely compressed in time and swapping out the original singer for a different one." The Court would add that these changes are substantial. While the words may be practically verbatim, there are few words to begin with. Further, particularly important in the eyes of the Court is the fact that the different singer is a very young cartoon character. These two major differences change the nature of the video, from one that is patently absurd, to one that parodies the original by creating an even more absurd product. Despite any shot-for-shot similarities, as has been catalogued by Ciraldo (Ciraldo Decl., App. 1), the Court finds that these changes make the use very transformative.

Page 13 of 19

Case 2:10-cv-01013-JPS   Filed 11/30/11   Page 13 of 19   Document 47

Further, the Court is convinced that Brownmark's motivation in filing this suit was questionable. Not only was Brownmark's position unreasonable, but it also waited nearly two years to file a lawsuit, only after being repeatedly rejected with warnings that South Park's use was copyrighted. (Docket #34, Ex. B). This demonstrates an attempt by Brownmark to use the threat of litigation against the defendants as a sort of "sword of Damocles"—hanging by a thread over the heads of the defendants while Brownmark attempted to extract a licensing fee. Of course, when the thread finally snapped and Brownmark brought this action, the parties quickly found the "sword" to be nothing more than a flimsy replica, as the Court dismissed the case outright at its earliest stage.

Next, the Court also must note that an award of attorneys' fees in this case will deter future actions by those similar to Brownmark; the Court is not entirely comfortable with this fact, though. The defendants in this case are sophisticated business entities with worldwide connections. Brownmark, on the other hand, is a very small company which can hardly bear the same costs as the defendants. Therefore, the Court must walk a fine line between one side of protecting the rights of defendants to parody others' works without being dragged into the legal muck for unreasonable claims and the other side of steering away from effectively robbing smaller plaintiffs of their artistic rights in their own work. While Brownmark's legal action was unreasonable, the Court fears that imposing financial ruination on a small company, like Brownmark, for an attempt to protect its rights might result in similarly-situated plaintiffs with stronger claims refraining from enforcement.

Page 14 of 19

Case 2:10-cv-01013-JPS   Filed 11/30/11   Page 14 of 19   Document 47

Despite that potential, though, the Court finds that an award of attorneys' fees in this case would deter future action that is similar to Brownmark's. As to the risk of keeping small plaintiffs out of court, the Court notes two things: first, that as important as those plaintiffs' artistic rights may be, the freedom of speech is perhaps of greater concern; and, second, that plaintiffs will not be subject to these fees if they engage in meaningful settlement talks before bringing their suit, work to resolve the case without court intervention, and reasonably consider the defendants' potential defenses.

Because the Court finds that all of the Supreme Court's factors are met, the defendants are entitled to attorneys' fees and costs in this case. This conclusion is strengthened by the Seventh Circuit's presumption that prevailing defendants are entitled to such fees and costs. *Assessment Techs.*, 361 F.3d at 436.

### 2.3 Reasonableness of Costs and Fees

In total, the defendants request $46,775.23 in attorneys' fees. Of that amount, approximately $3,500 was spent on initial discussions with the defendant parties and drafting the defendants' letter response to Brownmark (Docket #34, Ex. I at 39–43 (Billing Periods for Sep. 30, 2008, and Oct. 31, 2008)); another $7,500 was billed for reviewing the law, Brownmark's complaint, and potential strategies prior to filing a motion to dismiss (Docket #34, Ex. I at 43–51 (Billing Periods for Oct. 31, 2008, Feb. 28, 2009, and Dec. 31, 2010)); then $17,000 was billed for the preparation and filing of the defendants' motion to dismiss (Docket #34, Ex. I at 52–60 (Billing Periods for Jan. 31, 2011, and Feb. 28, 2011)); and, finally, approximately $9,500 was spent in preparation of the defendants' reply brief and other administrative matters

(Docket #34, Ex. I at 61–70 (Billing Periods for March 31, 2011, April 30, 2011, May 30, 2011, and June 30, 2011)); additional related services, provided by local counsel, also contributed approximately $10,000 to the final sum requested by the defendants (Docket #34, Ex. J).

The total calculation provided by the defendants, or the lodestar figure, is presumptively reasonable when the party seeking attorneys' fees has shown the rate and number of hours worked is reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

Brownmark does not dispute the reasonableness of the rates charged by the defendants' attorneys, but takes issue with a good portion of the hours worked by the defendants' attorneys. The Court finds those objections unpersuasive. Brownmark first argues that pre-suit costs cannot be awarded under Section 505. But Brownmark cites only its own interpretation of the language in that statute and a case that does not seem to support the proposition. (Pl.'s Resp. Atty. Fee 18–19 (citing *Lenz v. Universal Music Corp.*, 2010 U.S. Dist. LEXIS 125874 (N.D. Cal. 2010))). The Court believes that the defendants advocate a wiser course: allowing recovery of pre-suit fees. (Def.'s Reply Atty. Fee 11–12). In contrast to Brownmark, the defendants have cited ample case law that supports the imposition of pre-suit fees, including in a case similar to this one. (Def.'s Reply Atty. Fees 11–12 (citing *Mattel, Inc. v. MGA Entm't, Inc.*, 2011 U. S. Dist. LEXIS 85998 (C.D. Cal. August 4, 2011) and other non-copyright cases)).

Next, Brownmark argues that any hours worked that were not catalogued as specifically related to the defendants' fair use argument should be treated as inadequately documented and, therefore, not charged to Brownmark. (Pl.'s Resp. Atty. Fees 19–20 (citing *Ohio-Sealy Mattress Mfg. Co.*

*v. Sealy, Inc.*, 776 F.2d 646, 651 (7th Cir. 1985), *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001))). According to Brownmark, the defendants' fees that are attributable to the fair use argument amount to less than $10,000. (Pl.'s Resp. Atty Fees 20). Again, though, the defendants have the best of the argument: the "central issue" of this entire litigation was the fair use issue. That issue consumed much of the pre-lawsuit discussions and a large chunk of the briefs filed on the motion to dismiss.

While the Court disagrees with Brownmark's arguments for docking the reasonable number of hours worked, the Court will, nonetheless, dock that number of hours as unduly duplicative. After reviewing the initial letter sent by the defendants to Brownmark, the defendants' brief in support of their motion to dismiss, and the defendants' reply brief on that matter, the Court determines that the defendants' attorneys were able to reuse significant portions of their research in preparing each item. As such, the Court finds that the defendants billed an unreasonable number of hours in the preparation of each of those items. Accordingly, the Court docks one-half of the number of hours spent in preparation of the brief in support and the reply brief, effectively reducing the total fee by approximately $12,750. The Court also finds that approximately one-half of local counsel's time was spent in preparation of the same materials, and docks one-half of that amount, or approximately $2,500. In sum, the Court docks approximately $15,250 of the total $46,775.23 sought by the defendants, leaving $31,525.23.

However, the Court will also exercise its discretion and limit Brownmark's fee liability to a much smaller amount than even the reduced $31,525.23 figure. Despite all that has come before in this case, the Court

remains cognizant of the fact that Brownmark is a very small entity, without extensive assets. The Court has discretion in determining an award of attorneys' fees under Section 505, and may exercise that discretion to reduce a fee, taking into account the financial circumstances of a party. *Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992), *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986), *Quaglia v. Bravo Networks*, 2006 U.S. Dist. LEXIS 67123, at *5 (D. Mass. Sep. 19, 2006), *Polsby v. St. Martin's Press, Inc.*, 2000 U.S. Dist. LEXIS 596, at *7 (S.D.N.Y. Jan. 18, 2000), *Littel v. Twentieth-Century Fox Film Corp.*, 1996 U.S. Dist. LEXIS 454, at *3 (S.D.N.Y. Jan. 17, 1996). "[T]he aims of the Copyright Act are compensation and deterrence where appropriate, but not ruination." *Lieb*, 788 F.2d at 156.

Thus, the Court will impose a fee that is lower than the $31,525.23 reasonable amount; this final fee will be tied to Brownmark's size and ability to pay. However, as the plaintiff has not submitted any documentation of its assets and ability to pay attorneys' fees, the Court requests that Brownmark submit such documentation under seal (including relevant information such as account balances, value of the company, salaries of the proprietors, any additional sources of income or substantial assets held by the proprietors, and the debts of both Brownmark and the individual proprietors). Accompanying that submission, Brownmark shall include a short statement and calculation regarding the fees it believes it is able to pay without causing bankruptcy. Cognizant of the already-substantial amount of submissions in this case—particularly as relates to the issue of attorneys' fees—the Court will allow, but not require, the defendants to respond to that submission with a similarly brief statement, also to be filed under seal, addressing the plaintiff's calculated amount.

3. Conclusion

For the foregoing reasons—fully considering all of the appropriate evidence, the arguments of the parties, the purposes of this country's copyright laws, Brownmark's financial situation, and the Court's own discretion under the law—the Court will grant an award of attorneys' fees and costs to the defendants, but will dock that award by an amount to be determined following further submission by the parties.

Accordingly,

IT IS ORDERED that the defendants' motion for attorneys' fees and costs (Docket #34) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the plaintiff shall submit an affidavit detailing its financial status and an accompanying brief, which shall not exceed three (3) pages, by December 20, 2011; and

IT IS FURTHER ORDERED that the defendants may submit a responsive brief, which shall not exceed three (3) pages, by December 30, 2011; if the defendants do not wish to file a responsive brief, they shall submit documentation to the Court notifying it of such decision.

Dated at Milwaukee, Wisconsin, this 30th day of November, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge