# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

BROWNMARK FILMS, LLC,

                           Plaintiff,

v.

COMEDY PARTNERS,
MTV NETWORKS,
PARAMOUNT PICTURES CORP.,
SOUTH PARK DIGITAL STUDIOS, LLC,
and VIACOM INTERNATIONAL, INC.,

                          Defendants.

Case No. 10-CV-1013-JPS

ORDER

On July 6, 2011, the Court dismissed all of Brownmark's claims against the defendants. (Docket #23). Shortly thereafter, the defendants filed a motion requesting that the Court grant it attorney fees and costs. (Docket #34). After receiving ample briefing on the issue, the Court granted the defendants' request, but reduced the fees and costs award to $31,525.23, from the original $46,775.23 requested by the defendants. (Docket #47). However, relying on a series of cases in which courts have reduced the ultimate fees award due to parties' inability to pay, the Court requested financial documentation from Brownmark and further briefing from the parties to determine whether the fee award should be further reduced in order to accommodate Brownmark's limited financial resources. (Docket #47). The parties have now fulfilled the Court's request, providing the Court with

adequate information to provide a basis for the Court's final determination of the fees award.[1]

To begin, the Court reiterates the purpose of the Copyright Act's fee-shifting statute (17 U.S.C. § 505), compensation and deterrence, and finds that those factors ultimately weigh in favor of leaving the entire $31,525.23 fee intact. In this case, the compensation factor is not particularly strong. Defendants are all large and successful media corporations with (presumably) substantial assets, while Brownmark is a small company, which currently holds very limited assets. *See, e.g., Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 795–96 (S.D. Tex. 2009) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524, 534 (1994), *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004), *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1012 (S.D. Tex. 2000)); (Docket #50, #51).

On the other hand, the deterrence factor weighs in favor of a fee award for several reasons. First, prior to the Court's decision, the defendants warned Brownmark that the defendants' use of Brownmark's copyrighted material was protected as fair use. (Docket #34, #38). Brownmark declined to heed that warning, though, and proceeded with their case; however, the Court agreed wholeheartedly with the defendants, ultimately dismissing the case at an early stage employing the same analysis the defendants urged upon Brownmark. (Docket #23). Further, when the defendants offered to forgo their request for fees and costs in exchange for Brownmark's waiver of

---

[1]As a side note, the Court would like to express its sincere appreciation to the parties for their diligent efforts in accommodating the Court's multiple requests for additional briefing on this issue. At this point, the parties have submitted substantial briefing and documentation to the Court, all of which has greatly assisted the Court in reaching its decision.

their right to appeal, Brownmark declined. (Docket #55). This indicates to the Court that Brownmark is not so easily deterred by the threat of attorney fees and costs, and thus a small award does adequately deter them, specifically from filing actions. Further, an excessively small award that will have little long-ranging consequence to them will not offer general deterrence, with which the Court should also be concerned. Therefore, the Court determines that it should leave the full $31,525.23 award in place.

Though the entire award will stand, the Court will offer some payment modifications, in order to slightly reduce the immediate burden on Brownmark, with the expectation that the award will not cause the demise of a fledgling business enterprise. As the Court noted in its prior order (Docket #47), it has discretion to determine the fees award, and should modify an award to take account of the compensation and deterrence aims of the Copyright Act, while shying away from imposing "ruination." *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986); *cf. Assessment Techs.*, 361 F.3d at 436 (noting that considerations of compensation are intended to enable less-financially-strong individuals to vindicate their rights); *see also*, *Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992), *Quaglia v. Bravo Networks*, 2006 U.S. Dist. LEXIS 67123, at *5 (D. Mass. Sep. 19, 2006), *Polsby v. St. Martin's Press, Inc.*, 2000 U.S. Dist. LEXIS 596, at *7 (S.D.N.Y. Jan. 18, 2000), *Littel v. Twentieth-Century Fox Film Corp.*, 1996 U.S. Dist. LEXIS 454, at *3 (S.D.N.Y. Jan. 17, 1996). As such, the Court believes it has the discretion to structure the award in an acceptable fashion.

Exercising that discretion, the Court will direct that Brownmark make an up-front payment of $2,500 together with additional payments based upon an annual accounting. In their disclosures to the Court, Brownmark

Case 2:10-cv-01013-JPS   Filed 02/08/12   Page 3 of 6   Document 57

indicated that it would currently be able to afford an initial payment of a $2,500 award, and the Court, therefore, imposes that award. (Docket #47). However, Brownmark's current financial situation does not take into account its full asset-ownership situation. In fact, it fails to account for the valuable asset that was the subject of this litigation: Brownmark's ownership of the copyright of the "What What in the Butt" (WWITB) video. According to Brownmark's financial disclosures, this asset brings its creators a fairly substantial amount of revenues (mainly advertising-derived) each month.

With that knowledge, and with the expectation of ensuring that this Order serves the deterrence purpose of the Copyright Act's fee-shifting statute, the Court will direct that Brownmark pay a portion of the WWITB revenues to the defendants at the end of each calendar year, in satisfaction of the Court's fees and costs award. This requirement will remain in place for five years. Thus, for this year (2012) and the following four years (2013, 2014, 2015, and 2016), Brownmark must provide to the defendants with a year-end accounting of ad revenues from the WWITB video and pay them a portion of those revenues. If, however, Brownmark satisfies the full fees and costs award, plus 5% annual interest, prior to the expiration of that five year period, their obligations will be deemed satisfied, and Brownmark will not have any further obligation under this order.

The Court determines that 25% of ad revenues earned by the WWITB video will be an appropriate portion of revenues to be paid to the defendants. To begin, 25% should annually net a fairly substantial amount for the defendants while still leaving Brownmark with ample assets to carry on operations and continue producing material. Further, the Court limits the 25% portion to come out of ad revenues in order to enable easier accounting.

Case 2:10-cv-01013-JPS   Filed 02/08/12   Page 4 of 6   Document 57

Brownmark's submissions to the Court provided an easy-to-understand statement of ad revenues for the WWITB video; using that as a guide, Brownmark should be able to easily account for total ad revenues to the defendants each year and calculate the 25% portion due to them. Should there be any disputes regarding payment of fees, the parties may petition this Court for resolution.

Finally, the Court also notes that this award shall be payable solely by Brownmark. Brownmark's proprietors did not personally sue the defendants, nor have they engaged in any action that the Court believes would be appropriate to justify "piercing the veil" that shields their personal assets from liability. Therefore, the award of attorney fees and costs should be payable only from Brownmark's corporate assets.

Accordingly,

IT IS ORDERED that the plaintiff shall pay to the defendants $31,525.23 in satisfaction of the Court's award of attorney fees and costs to the defendants (Docket #47);

IT IS FURTHER ORDERED that such amount shall be payable according to the following structure: $2,500 payable immediately; 25% of total annual yearly ad revenues, payable annually for the calendar years 2012, 2013, 2014, 2015, and 2016; in the case that the total amounts paid by the plaintiff meet the total award plus 5% interest prior to the expiration of the five-year period, the plaintiff will be under no further financial obligation to the defendant; in the case that, at the expiration of the five-year period, there is any amount still owing to the defendants, that amount shall be discharged without further notification of the Court; and

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over this matter during that five-year period to resolve any disputes that arise between the parties regarding the satisfaction of the plaintiff's obligation.

Dated at Milwaukee, Wisconsin, this 8th day of February, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge